UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EDWARD NANCE, | ) | |
| | ) | |
| Plaintiff, | ) | 17 C 8094 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| COMCAST BUSINESS COMMUNICATIONS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Edward Nance brought this suit in state court against his former employer, Comcast Business Communications, Inc., alleging common law retaliatory discharge. Doc. 1-1 at pp. 52-55. Comcast removed the suit under the diversity jurisdiction, Doc. 1, and now moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss for failure to state a claim, Doc. 11. The motion is granted.

**Background**

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Nance's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013). The facts are set forth as favorably to Nance as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth those facts at the pleading stage, the court does

not vouch for their accuracy. *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 384 (7th Cir. 2010).

Nance began working for Comcast in July 2004. Doc. 1-1 at p. 52, ¶ 3. On May 24, 2015, he injured his shoulder while off duty. *Id*. at ¶ 4. Nance continued working for a week, but was unable to perform his duties due to the injury and decided to go on short-term disability leave. *Id*. at ¶ 5. He returned to work on March 14, 2016, but the injury still hampered his work. *Id*. at ¶ 6.

On July 1, 2016, Nance had rotator cuff surgery. *Ibid*. He was unable to work while recuperating over the next six months. *Id*. at p. 53, ¶ 7. During that time, Nance repeatedly attempted to collect from Comcast disability payments to which he was contractually entitled. *Id*. at ¶ 8. On December 30, 2016, he submitted doctor's reports to Comcast indicating that he needed to remain off work but would be re-evaluated after an MRI. *Id*. at ¶ 9. While Nance was awaiting the MRI, Comcast fired him on January 9, 2017. *Id*. at ¶ 10.

## Discussion

Nance's common law retaliatory discharge claim alleges that he was wrongfully discharged in violation of two Illinois public policies: (1) a policy against retaliating against employees who assert disability benefits to which they are contractually entitled; and (2) a policy against discharging employees who are under doctor's orders not to work. *Id*. at pp. 53-54. Comcast argues that neither purported policy can ground a retaliatory discharge claim under Illinois law. Doc. 11-1 at 5-7.

Nance's opposition brief does not defend his second retaliatory discharge theory, Doc. 20, thereby abandoning and forfeiting that theory. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by

failing to make it before the district court. That is true whether it is an affirmative argument in support of a motion to dismiss or an argument establishing that dismissal is inappropriate.") (citations omitted); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("Our system of justice is adversarial, and our judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning.") (internal quotation marks omitted). That leaves Nance's first theory, which rests on the policy against retaliating against employees who assert their contractually-mandated disability benefits.

Illinois is an at-will employment state, meaning that "an employer may discharge an employee-at-will for any reason or for no reason." *Turner v. Mem'l Med. Ctr.*, 911 N.E.2d 369, 374 (Ill. 2009) (internal quotation marks omitted); *see also Brandon v. Anesthesia & Pain Mgmt. Assocs., Ltd.*, 277 F.3d 936, 940 (7th Cir. 2002). The Supreme Court of Illinois, however, "has recognized the limited and narrow tort of retaliatory discharge as an exception to the general rule of at-will employment." *Jacobson v. Knepper & Moga, P.C.*, 706 N.E.2d 491, 492 (Ill. 1998). "To state a valid retaliatory discharge cause of action, an employee must allege that (1) the employer discharged the employee, (2) in retaliation for the employee's activities, and (3) that the discharge violates a clear mandate of public policy." *Turner,* 911 N.E.2d at 374; *see also Darchak v. City of Chi. Bd. of Educ.*, 580 F.3d 622, 628 (7th Cir. 2009); *Blount v. Stroud*, 904 N.E.2d 1, 9 (Ill. 2009); *Palmateer v. Int'l Harvester Co.*, 421 N.E.2d 876, 877-78 (Ill. 1981). The public policy invoked by the employee must "strike at the heart of a citizen's social rights, duties, and responsibilities." *Turner*, 911 N.E.2d at 374 (internal quotation marks omitted).

As the Supreme Court of Illinois recently recognized, "a review of Illinois case law reveals that retaliatory discharge actions have been allowed in two settings: where an employee

3

is discharged for filing, or in anticipation of filing, a claim under the Workers' Compensation Act; or where an employee is discharged in retaliation for the reporting of illegal or improper conduct, otherwise known as 'whistleblowing.'" *Michael v. Precision Alliance Grp., LLC,* 21 N.E.3d 1183, 1188 (Ill. 2014) (citation omitted); *see also Bourbon v. Kmart Corp.*, 223 F.3d 469, 472 (7th Cir. 2000) ("Illinois law allows claims for retaliatory discharge when an employee is terminated for filing a workers' compensation claim or because the employee has reported the employer's criminal conduct, either to law enforcement personnel or to the company itself."). "The Illinois Supreme Court has defined 'public policy' only within these limited bounds and thus has consistently sought to restrict the common law tort of retaliatory discharge." *Darchak*, 580 F.3d at 629.

Accepting Nance's invitation to recognize a third setting for the retaliatory discharge tort would broaden liability under that tort without the imprimatur of the Illinois courts. That is significant, as the Seventh Circuit has repeatedly cautioned that when "faced with two opposing and equally plausible interpretations of state law," a federal court should generally "choose the narrower interpretation which restricts liability, rather than the more expansive interpretation which creates substantially more liability." *Home Yalu, Inc. v. Pep Boys-Manny, Moe & Jack of Del., Inc.*, 213 F.3d 960, 963 (7th Cir. 2000) (internal quotation marks omitted); *see also Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 636 (7th Cir. 2007); *S. Ill. Riverboat Casino Cruises, Inc. v. Triangle Insulation & Sheet Metal Co.*, 302 F.3d 667, 676 (7th Cir. 2002). This principle governs even where, as here, the defendant removes to federal court a case initially filed in state court. *See Pisciotta*, 499 F.3d at 636 n.5 ("We have applied this restrictive approach to a plaintiff's novel theory of liability under state law even where the plaintiff had no choice but to litigate his claim in federal court."); *Insolia v. Philip Morris Inc.*, 216 F.3d 596,

607 (7th Cir. 2000) (holding that, although "[t]he plaintiffs are in a predicament because state law in this area is stunted by the ability of [the defendants] to remove cases under diversity jurisdiction[,] … that does not justify the federal courts imposing a new tort claim on Wisconsin"). Accordingly, Nance may proceed only if he can overcome the strong presumption erected by Seventh Circuit precedent against recognizing the heretofore unrecognized theory underlying his retaliatory discharge claim. He has failed to overcome that presumption; in fact, his claim would fail even absent the presumption.

To properly plead a retaliatory discharge claim, a plaintiff must articulate the relevant public policy with specificity. The Supreme Court of Illinois repeatedly emphasized this point in *Turner*, holding that "[a] broad, general statement of policy is inadequate to justify finding an exception to the general rule of at-will employment"; that "[a]ny effort to evaluate the public policy exception with generalized concepts of fairness and justice" is insufficient; that "unless an employee at will identifies a specific expression of public policy, the employee may be discharged with or without cause"; and that "[a]n employer should not be exposed to liability where a public policy standard is too general to provide any specific guidance or is so vague that it is subject to different interpretations." 911 N.E.2d at 375-76 (internal quotation marks omitted). "[T]he mere citation of a constitutional or statutory provision in a complaint will not, by itself, be sufficient to state a cause of action for retaliatory discharge. Rather, an employee must show that the discharge violated the public policy that the cited provision clearly mandates." *Id*. at 377.

Nance identifies three sources for a public policy against discharging workers for asserting their contractual rights to disability payments. None suffices under *Turner*. First, he points to the Health Insurance Claim Filing Act, which provides that "[n]o employer … shall

5

discharge an employee where the basis for such discharge is retaliation for the filing of a legitimate claim or the actual use or receipt of medical or health services by an employee under [an employer-provided] insurance policy." 820 ILCS 45/2. Second, he cites *Kelsay v. Motorola, Inc.*, 384 N.E.2d 353 (Ill. 1978), which recognized the retaliatory discharge tort under circumstances where an employee is terminated for filing a workers' compensation claim. *Id*. at 357. As Nance recognizes, however, a disability benefits claim is not a health insurance claim or a workers' compensation claim, so neither the Health Insurance Claim Filing Act nor *Kelsay* applies. Nance retorts that the policy behind the Health Insurance Claim Filing Act and *Kelsay* "is naturally extended to disability benefits," Doc. 20 at 4, but that extension is forbidden by *Turner*, which requires a plaintiff to "show that the discharge violated the public policy that the cited provision [or case] *clearly* mandates." 911 N.E.2d at 377 (emphasis added); *see also Teschky v. Buschman Residential Mgmt. LLC*, 2012 WL 6970847, at *12 (Ill. App. July 25, 2012) (rejecting a retaliatory discharge claim where the defendant's conduct was not covered by the statutory prohibition cited by the plaintiff).

Third, Nance cites the declaration-of-policy provision of the Illinois Unemployment Insurance Act, which states that "[e]conomic insecurity due to involuntary unemployment has become a serious menace" and that "[i]nvoluntary unemployment is … a subject of general interest and concern." 820 ILCS 405/100. That is the very sort of vague, general statement of policy that *Turner* held cannot support a retaliatory discharge claim. *See* 911 N.E.2d at 375-76 (citing cases holding that the "right to marry," "product safety," "promoting quality health care," and "the Hippocratic Oath" were "insufficient allegations of public policy" for purposes of the retaliatory discharge tort). Taken to its logical conclusion, that provision would lend support to

6

*any* retaliatory discharge claim; it does nothing to explain why Illinois should extend the tort to employees who are fired for seeking disability benefits.

Whether or not the presumption against expanding Illinois tort liability applies, Nance has not come close to establishing that the retaliatory discharge tort covers employees seeking contractual disability benefits. His retaliatory discharge claim accordingly fails as a matter of law. Because that defect cannot be cured by repleading, the dismissal is with prejudice. *See Tribble v. Evangelides*, 670 F.3d 753, 761 (7th Cir. 2012) ("District courts have broad discretion to deny leave to amend … where the amendment would be futile."). In any event, Nance's opposition brief does not request a chance to replead in the event his complaint is dismissed. *See Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 335 (7th Cir. 2018) ("Nothing … in any of our cases suggests that a district court must give leave to amend a complaint where a party does not request it … . To the contrary, we have held that courts are within their discretion to dismiss with prejudice where a party does not make such a request … .").

## Conclusion

Comcast's motion to dismiss is granted. This suit is dismissed with prejudice, and judgment will be entered in favor of Comcast and against Nance.

May 8, 2018

United States District Judge